J-A06023-18

2018 PA Super 182

IN RE: J'K.M., A MINOR

APPEAL OF: A.M., NATURAL
MOTHER

: IN THE SUPERIOR COURT OF
:       PENNSYLVANIA
:
:
:
:
:
:
:
: No. 1390 WDA 2017

Appeal from the Order Entered August 24, 2017
In the Court of Common Pleas of Allegheny County Family Court at No(s):
CP-02-DP-0000208-2016

BEFORE:    BENDER, P.J.E., SHOGAN, J., and STRASSBURGER*, J.

OPINION BY SHOGAN, J.:                  **FILED JUNE 26, 2018**

A.M. ("Mother"), the natural mother of J'K.M. ("Child"), appeals from the order entered on August 24, 2017, denying Mother's motion for the appointment of a separate guardian *ad litem* ("GAL"), to represent Child's best interests in the underlying dependency proceedings.[1] After careful review, we reverse and remand for the trial court to appoint a GAL to represent Child's best interests and Child's current GAL shall act as counsel representing Child's legal interests.

The trial court set forth the relevant facts and procedural history of this matter as follows:

_____

[1] We are satisfied that, although the order in question is not a final order, we have jurisdiction, and this appeal is properly before our Court as an appeal from a collateral order pursuant to Pa.R.A.P. 313(b).

_____
*   Retired Senior Judge assigned to the Superior Court.

[Child] is a 16 year old girl[2] who had previously been declared dependent[3] but remained in the care of [M]other. [Child has, at times, been placed in foster care. Order, 4/18/16; Order 7/27/17.] [Child] has a history of serious health problems, specifically asthma that requires close medical supervision. On a number of occasions [M]other and [Child] both neglected the appropriate medication to control [Child's] asthma. As a result of this neglect [Child] was required to be hospitalized on a number of occasions. Additionally, after said hospitalizations doctor['s] appointments have been scheduled for [Child] to monitor and follow up on her treatment. Once again, [M]other and [Child] more than once failed to attend these appointments. As a result of the failure to appreciate the seriousness of [Child's] asthma and the impact on her health she has been hospitalized on more than one occasion. The caseworker testified that there is family history of serious asthma complications including the death of [Child's] father as asthma related.

In addition to the health concerns, testimony was set forth at a Permanency Review Hearing on June 19, 2017 before Hearing Officer Hobson that [Child] often stays away from home for multiple nights with either friends or her boyfriend. Specifically, at the time of the hearing [Child] had been staying with her boyfriend because of a fight she had with [M]other.

Prior to the Permanency Review Hearing Attorney Engle was appointed both as Attorney for [Child], as well as Guardian Ad Litem for [Child].

During the Permanency Review Hearing testimony was presented by [M]other who confirmed that she had missed meetings and indicated that she had a "full plate" with her other children and sometimes had difficulties making all medical appointments. [Child] also testified and indicated that she

---

[2] Child turned seventeen in March of 2018.

[3] Child was adjudicated dependent pursuant to 42 Pa.C.S. § 6302(1), as she was "without proper care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." Order, 4/18/16.

wanted to be in charge of her medical treatment but understood at age 16 she was unable to do so. That being said, [Child] was allowed to fully testify by Attorney Engle and she fully set her position that she wished to return home to [M]other. [Child] did not like living in foster care because she was made to follow a more structured schedule with things such as eating meals, sleep times and attendance of school. At the conclusion of the testimony Attorney Engle, in the role as Counsel for [Child] set forth [C]hild's legal interests which is the expression of the child's wishes. Attorney Engle set forth that [C]hild's testimony was clear both as to her reasoning to go home to live with [M]other and her desire to remain with [M]other.[4] Attorney Engle then acting as Guardian Ad Litem was required to set forth the appropriate Guardian Ad Litem opinion as to the best interest for [Child]. This Opinion was based upon the on-going hospitalizations of [Child], [M]other's failure to attend medical appointments, [and Child's] failure to attend medical appointments as well as truancy issues[;] [these factors] caused the Guardian Ad Litem to opine that [Child] should be removed from the home.

It was at this point counsel for [M]other objected and asked for the appointment of a separate Guardian Ad Litem. …

Counsel for [M]other filed what was entitled a Motion For Appointment For Separate Guardian Ad Litem. While this Court

---

[4] As a point of clarification, the trial court states that Child "wished to return home to [M]other" and was clear "as to her reasoning to go home to live with [M]other." Trial Court Opinion, 11/20/2017, at 2. Later in its opinion, the trial court states that Attorney Engle "set forth reservations as to the return of [Child] to [M]other." *Id.* at 5. However, the record indicates that Mother had physical custody of Child at the time of the June 2017 hearing. *See* Permanency Review Order (Non-Placement) – Amended, 6/19/2017, at 2. Thus, Child was living with Mother, although Child admitted that she was spending three to four nights a week away from Mother's home. N.T., 6/19/2017, at 49. Child testified that she wanted to keep living with Mother and did not wish to return to foster care. N.T., 6/19/2017, at 52. Attorney Engle, on the other hand, stated his belief that it was in Child's best interest to be removed from Mother's home but did not specify where Child should be placed.

believes such Motion was incorrectly titled, the Court treated the Motion [as] a Motion To Disqualify Attorney Engle as Guardian Ad Litem due to conflict of interest.

A hearing was conducted before this Court on the Motion at which time all parties stipulated to the transcript of the proceedings before Hearing Officer Hobson. No further testimony or any factual evidence was presented at the time of this Motion. After hearing the legal arguments of all parties this Court denied the request to appoint a separate Guardian Ad Litem.

Trial Court Opinion, 11/20/17, at 1-3.

On September 25, 2017, Mother filed a timely notice of appeal.[5] Both Mother and the trial court complied with Pa.R.A.P. 1925.

On appeal, Mother raises the following issue for this Court's consideration:

Does a conflict of interest arise when a child expressly states their preferred outcome and the GAL attorney advocates for another?

Mother's Brief at 6 (full capitalization omitted).

Review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. *In Interest of J.P.*, 178

_____

[5] The thirtieth day after the entry of the August 24, 2017 order fell on Saturday, September 23, 2017. *See* Pa.R.A.P. 903(a) (generally, the notice of appeal must be filed within thirty days after the entry of the order from which the appeal is taken). Accordingly, Mother had until Monday, September 25, 2017, to file a timely notice of appeal. *See* 1 Pa.C.S. § 1908 (when the last day of a given time period in a statute falls on a Saturday, Sunday, or legal holiday, such day shall be omitted from the computation).

A.3d 861, 864 (Pa. Super. 2018). Accordingly, we review the trial court's decision under an abuse-of-discretion standard. ***Id.***

Necessary to our discussion of Mother's issue are two Pennsylvania Rules of Juvenile Court Procedure and one section of the Juvenile Act, 42 Pa.C.S. §§ 6301-6375. Rule 1151 of the Pennsylvania Rules of Juvenile Court Procedure provides, in relevant part:

Assignment of Guardian ***Ad Litem*** & Counsel

**A. Guardian ad litem for child.** The court shall assign a guardian ad litem to represent the legal interests and the best interests of the child if a proceeding has been commenced pursuant to Rule 1200 alleging a child to be dependent who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the physical, mental or emotional health, or morals;

* * *

**B. Counsel for child.** The court shall appoint legal counsel for a child:

(1) if a proceeding has been commenced pursuant to Rule 1200 alleging a child to be dependent who:

(a) while subject to compulsory school attendance is habitually and without justification truant from school;

(b) has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of the child's guardian and who is ungovernable and found to be in need of care, treatment, or supervision;

(c) is under the age of ten years and has committed a delinquent act;

(d) has been formerly adjudicated dependent, and is under the jurisdiction of the court, subject to its conditions or placements and who commits an act which is defined as ungovernable in paragraph (B)(1)(b);

(e) has been referred pursuant to section 6323 (relating to informal adjustment), and who commits an act which is defined as ungovernable in paragraph (B)(1)(b); or

(f) has filed a motion for resumption of jurisdiction pursuant to Rule 1634; or

(2) upon order of the court.

**C. Counsel and Guardian ad litem for child.** If a child has legal counsel and a guardian ad litem, counsel shall represent the legal interests of the child and the guardian ad litem shall represent the best interests of the child.

Pa.R.J.C.P. 1151(A)-(C). Rule 1154 provides:

Duties of Guardian *Ad Litem*

A guardian *ad litem* shall:

(1) Meet with the child as soon as possible following assignment pursuant to Rule 1151 and on a regular basis thereafter in a manner appropriate to the child's age and maturity;

(2) On a timely basis, be given access to relevant court and county agency records, reports of examination of the guardians or the child, and medical, psychological, and school records;

(3) Participate in all proceedings, including hearings before juvenile court hearing officers, and administrative hearings and reviews to the degree necessary to adequately represent the child;

(4) Conduct such further investigation necessary to ascertain the facts;

(5) Interview potential witnesses, including the child's guardians, caretakers, and foster parents, examine and cross-examine witnesses, and present witnesses and evidence necessary to protect the best interests of the child;

(6) At the earliest possible date, be advised by the county agency having legal custody of the child of:

> (a) any plan to relocate the child or modify custody or visitation arrangements, including the reasons, prior to the relocation or change in custody or visitation; and

> (b) any proceeding, investigation, or hearing under the Child Protective Services Law, 23 Pa.C.S. § 6301 et seq. or the Juvenile Act, 42 Pa.C.S. § 6301 et seq., directly affecting the child;

(7) Make any specific recommendations to the court relating to the appropriateness and safety of the child's placement and services necessary to address the child's needs and safety, including the child's educational, health care, and disability needs;

(8) Explain the proceedings to the child to the extent appropriate given the child's age, mental condition, and emotional condition; and

(9) Advise the court of the child's wishes to the extent that they can be ascertained and present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the child, determine to the fullest extent possible the wishes of the child and communicate this information to the court.

Pa.R.J.C.P. 1154. Furthermore, the comment to Rule 1154 provides guidance as to how the parties and the court are to manage a conflict between the best interests and legal interests of a child as follows:

*Comment:* If there is a conflict of interest between the duties of the guardian *ad litem* pursuant to paragraphs (7) and (9), the guardian ad litem for the child may move the court for appointment as legal counsel and assignment of a separate guardian *ad litem* when, for example, the information that the guardian *ad litem* possesses gives rise to the conflict and can be used to the detriment of the child. If there is not a conflict of interest, the guardian *ad litem* represents the legal interests and best interests of the child at every stage of the proceedings. 42 Pa.C.S. § 6311(b). To the extent 42 Pa.C.S. § 6311(b)(9) is inconsistent with this rule, it is suspended. *See* Rules 1151 and 1800. *See also* Pa.R.P.C. 1.7 and 1.8.

"Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.

Pa.R.J.C.P. 1154 cmt.

Additionally, the relevant portion of the Juvenile Act, Section 6311, which provides for the appointment of a GAL, states:

**(a) Appointment.--**When a proceeding, including a master's hearing, has been initiated alleging that the child is a dependent child under paragraph (1), (2), (3), (4) or (10) of the definition of "dependent child" in section 6302 (relating to definitions),[6] the court shall appoint a guardian ad litem to represent the legal interests and the best interests of the child. The guardian ad litem must be an attorney at law.

**(b) Powers and duties.--**The guardian ad litem shall be charged with representation of the legal interests and the best interests of the child at every stage of the proceedings and shall do all of the following:

_____

6 As noted, Child was adjudicated dependent under Pa.C.S. § 6302(1). Order, 4/18/16.

(1) Meet with the child as soon as possible following appointment pursuant to section 6337 (relating to right to counsel) and on a regular basis thereafter in a manner appropriate to the child's age and maturity.

(2) On a timely basis, be given access to relevant court and county agency records, reports of examination of the parents or other custodian of the child pursuant to this chapter and medical, psychological and school records.

(3) Participate in all proceedings, including hearings before masters, and administrative hearings and reviews to the degree necessary to adequately represent the child.

(4) Conduct such further investigation necessary to ascertain the facts.

(5) Interview potential witnesses, including the child's parents, caretakers and foster parents, examine and cross-examine witnesses and present witnesses and evidence necessary to protect the best interests of the child.

(6) At the earliest possible date, be advised by the county agency having legal custody of the child of:

> (i) any plan to relocate the child or modify custody or visitation arrangements, including the reasons therefor, prior to the relocation or change in custody or visitation; and

> (ii) any proceeding, investigation or hearing under 23 Pa.C.S. Ch. 63 (relating to child protective services) or this chapter directly affecting the child.

(7) Make specific recommendations to the court relating to the appropriateness and safety of the

child's placement and services necessary to address the child's needs and safety.

(8) Explain the proceedings to the child to the extent appropriate given the child's age, mental condition and emotional condition.

(9) Advise the court of the child's wishes to the extent that they can be ascertained and present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the child, determine to the fullest extent possible the wishes of the child and communicate this information to the court. **A difference between the child's wishes under this paragraph and the recommendations under paragraph (7) shall not be considered a conflict of interest for the guardian ad litem.**

42 Pa.C.S. § 6311 (emphasis added).

Thus, a dependency court is required by statute to appoint a GAL, who must be an attorney. 42 Pa.C.S. § 6311(a). The GAL is authorized to represent both a child's legal and best interests. *Id.* Pursuant to Section 6311(b)(7), the GAL's duties in representing a child's best interests include making recommendations to the court regarding a child's placement needs. However, under Section 6311(b)(9), the GAL is to represent a child's legal interests by determining "to the fullest extent possible," a child's wishes, if those wishes are ascertainable. Factors that must be considered when ascertaining a child's wishes, or legal interests, are a child's age and mental and emotional condition. 42 Pa.C.S. § 6311(b)(9).

The difficulty arises when, as occurred in this case, the two interests conflict. In this regard, we find *In re Adoption of L.B.M.*, 161 A.3d 172

(Pa. 2017) instructive, despite that case involving the appointment of counsel in termination of parental rights cases under 23 Pa.C.S. § 2313. Justice Wecht, the author of the lead opinion in **L.B.M.**, stated that 23 Pa.C.S. § 2313(a) requires the trial court to appoint counsel for a child in a termination of parental rights case, and the failure to do so is a structural error and is not subject to harmless error analysis. **L.B.M.**, 161 A.3d at 183. In part II-B of the lead opinion, Justice Wecht concluded that a trial court is required to appoint counsel to represent a child's legal interests even when the child's GAL, who is appointed to represent the child's best interests, is an attorney. Justice Wecht concluded that the interests are distinct and require separate representation. Four members of the Court, Chief Justice Saylor, and Justices Baer, Todd, and Mundy disagreed with Justice Wecht's strict application of Section 2313(a); rather, they opined, in concurring and dissenting opinions, that separate representation is required only if the child's best interests and legal interests conflicted. In other words, a child's GAL may serve as child's counsel when the GAL's dual role does not create a conflict of interest. **L.B.M.**, 161 A.3d at 183–193. Thus, a conflict of interest analysis must be conducted to determine whether a child's legal interests diverge from the child's best interests. **In re Adoption of T.M.L.M.**, ___A.3d ___, 2018 PA Super 87, at *4 (Pa. Super. 2018) (remanding where a five-year old child's preference was equivocal

and child's counsel had not interviewed the child to determine whether his best interests and legal interests conflicted).

Furthermore, although Section 6311(b)(9) provides that a dependency GAL has no conflict of interest when the child's best interests and legal interests diverge, our Supreme Court suggested in such instances that the GAL should request appointment as legal counsel and the assignment of a separate GAL. **L.B.M.**, 161 A.3d at 175 n.4 (citing Pa.R.J.C.P. 1154 cmt.); **see also In Interest of C.P.**, 155 A.3d 631, 634 n.2 (Pa. Super. 2017) ("We note that if a child's wishes conflict with the GAL's belief of the best interests of that child, the GAL has a conflict and the court may separate the representation by retaining the GAL to act solely as the child's attorney and appointing a new GAL. Pa.R.J.C.P. 1151 cmt.").[7] Importantly, the Supreme Court suspended Section 6311(b)(9) to the extent that it conflicts with Rule 1154. Pa.R.J.C.P. No. 1800(3). Thus, pursuant to **L.B.M.**, **C.P.**, Rule 1154 and its comment, and the specific suspension of Section 6311(b)(9), a

_____

[7] We are cognizant that the dependency action in **C.P.** was necessitated due to status offenses under 42 Pa.C.S. § 6302(6), as opposed to parental failures under 42 Pa.C.S. § 6302(1) as in the case at bar. **C.P.**, 155 A.3d at 633. Under the Section 6302 definitions, children can be adjudicated dependent based on parental failures, such as here, or based on status offenses. Status offenses are defined as "conduct which if engaged in by an adult would not be legally prohibited." **In the Interest of R.B.**, 621 A.2d 1038, 1042 n.11 (Pa. Super. 1993) (citations omitted). Examples of status offenses include truancy, running away from home, and ungovernability. **Id.** Nevertheless, the discussion regarding conflict of interest is instructive.

divergence between the child's wishes under 42 Pa.C.S. § 6311(b)(9), and the GAL's recommendations under 42 Pa.C.S. § 6311(b)(7), may be considered a conflict of interest for the GAL.[8]

It is well settled that "[c]ompetency is the rule and incompetency the exception." ***Rosche v. McCoy***, 156 A.2d 307, 309 (Pa. 1959). Moreover, competency is presumed where the child is more than fourteen years of age. ***Id.*** at 310. Child was not an infant as she was sixteen years old at the time she testified that she wanted to remain in Mother's care despite the GAL's position that it was in Child's best interest to be placed elsewhere. Specifically, Child testified as follows:

---

[8] In his Dissenting Opinion in ***L.B.M.***, Justice Baer concluded:

> [I]n dependency proceedings under the Juvenile Act, a GAL Attorney represents both the best interests and legal interests of the child absent a conflict of interest. If there is a conflict of interest, the child must have a GAL representing her best interests and separate legal counsel representing legal interests. This provision is consistent with Pennsylvania's Rules of Professional Conduct which forbid an attorney from representing a client "if the representation involves a concurrent conflict of interest." Pa.R.P.C. 1.7(a) (entitled "Conflicts of Interest: Current Clients").

***L.B.M.***, 161 A.3d at 187 (Baer, J., dissenting). Although this language is not precedential, it is an apt discussion of the standards and duties inherent in dependency proceedings where the GAL and the child have conflicting interests. Indeed, despite being presented in Justice Baer's Dissenting Opinion, this language comports with the reasoning in Justice Wecht's lead opinion and Pa.R.J.C.P. 1154.

I feel as though the system failed me. I got raped. I got (inaudible) onto every house I came onto. I wasn't eating in foster care homes. Why put me back in the situation where I was depressed, losing weight, (inaudible) came up in my room. I didn't do nothing in placement but cry myself to sleep. And that's unhealthy. And that's when my grades went downhill. I wasn't mentally stable, being I felt like I was just in a group home. Nobody wanted me. So why move me into that predicament because it's not going to do nothing but make me go downhill again. And my grades not going to get no better.

N.T., 6/19/17, at 52. Thus, Child's wishes were clearly ascertainable. **See** Pa.R.J.C.P. 1154(9). Despite Child's desire to remain in Mother's care and the ordeals Child stated previously had occurred in foster care, the GAL argued against Child remaining at home. N.T., 6/19/17, at 55-56, 58-59. The GAL's best-interests position was based on his concern that Mother was neglecting Child's medical needs, resulting in Child attempting to manage her medical condition and being hospitalized multiple times, as well as Child spending numerous nights each week away from Mother's home.

We conclude that this divergence of opinions between Child's legal interests and best interests presents a conflict as contemplated in **L.B.M.** and Pa.R.J.C.P. 1151 and 1154. Accordingly, the GAL should have requested that the trial court appoint a separate GAL.[9]

---

[9] Although the GAL did not make such a request, Mother did so. On July 3, 2017, Mother motioned the trial court to appoint a separate GAL to represent Child apart from Child's current GAL. Mother averred there was a conflict between Child's best interests and her legal interests. Motion for Appointment of Separate Guardian Ad Litem, 7/3/17, at ¶¶ 5-9. We are satisfied that the issue of the appointment of a separate GAL due to a

*(Footnote Continued Next Page)*

J-A06023-18

In addressing this issue, the trial court noted that **L.B.M.** dealt with the termination of parental rights, and that Justice Wecht, the author of the lead opinion in **L.B.M.**, distinguished between the need for separate counsel in termination proceedings as opposed to dependency proceedings. Trial Court Opinion, 11/20/17, at 4. The trial court correctly explained that if there is a conflict between the GAL's representations under Section 6311(7) and the child's wishes under Section 6311(9), a separate attorney may be appointed, but if there is no conflict, the GAL would continue to represent the child's legal and best interests. Trial Court Opinion, 11/20/17, at 5. However, the trial court then stated as follows:

> A bald assertion such as has been made here, by counsel for [M]other, that because these two opinions conflict, there must be a conflict, is spurious and as such a baseless outcry which means little more than the "Trial Court was wrong". There is no substance of the record nor can there be. The parties agreed to stipulate to the entire record of the Hearing Officer in this matter that being Hearing Officer Hobson. [Child] was allowed to testify and made clear her desires as to placement. She was not inhibited in any way by counsel and only after [Child] made her representations did the attorney, acting appropriately, set forth reservations as to the return of [Child] to [M]other. Acting as Guardian Ad Litem the record is clear that there were multiple, very well founded reasons to support the divergent opinion of the GAL from the legal interests of [Child].

*Id.*

(Footnote Continued) ————————————

conflict between Child's legal and best interests was properly raised before the trial court. *See L.B.M.*, 161 A.3d at 176 (discussing an instance where a parent, as opposed to the GAL, presented this issue to the trial court, albeit in the context of termination proceedings).

- 15 -

Significantly, this analysis does not answer the salient questions: was there a conflict, and if so, does it require the appointment of a separate GAL? In fact, in its opinion, the trial court affirmatively stated that there was a conflict as Child and the GAL's positions diverged. Trial Court Opinion, 11/20/17, at 5. The trial court then discussed **Commonwealth v. Nixon**, 761 A.2d 1151 (Pa. 2000), and stated that where parents cannot or will not fulfill their duties, it is the obligation of the Commonwealth to take on that role under the doctrine of *parens patriae*.[10] **Id.** at 6. Applying this *parens patriae* theory, the trial court stated that Child was not receiving proper medical care, and it was the duty of the GAL to raise this concern. **Id.** The trial court continued:

> The objection to a conflict simply because there was a disparity, is absolutely of no moment and shows a complete lack of understanding of both the appropriate statute and the Court's interpretation of **LBM Supra** and its progeny. At no time did the objecting party attempt to place any evidence in record that would show that there would be a conflict due to privileged information and in fact at no time was there any attempt to show anything other than the disparity in the best interest of [Child] vers[u]s the legal interests. This reasoning is clearly insufficient to warrant the disqualification of the GAL and nothing in our statutes or our case law remotely suggests that that would be appropriate. As such, the Court entered the opinion that it did allowing Attorney Engle to continue both as counsel and GAL.

_____

[10] *Parens patriae* refers to the role of the state as sovereign and guardian of persons under a legal disability to act for themselves such as juveniles. **D.P. v. G.J.P.**, 146 A.3d 204, 211 n.9 (Pa. 2016) (citation omitted).

*Id.* at 6-7. We are constrained to conclude that the trial court's analysis is misplaced.

Although attorney-client privilege is one example of a potential conflict contemplated in the comment to Pa.R.J.C.P. 1154, it is not the only potential for conflict. Moreover, the trial court's characterization of Mother's desire to "disqualify" the GAL is errant. Nothing in the record leads this Court to conclude that Mother simply wanted the GAL disqualified; Mother requested the appointment of a **separate** GAL to represent Child's best interests while the current GAL represented Child's legal interests, as contemplated in the comment to Pa.R.J.C.P. 1154. Motion for Appointment of Separate Guardian Ad Litem, 7/3/17, at ¶9.

As noted above, Child and the GAL had diametrically opposed positions on Child's placement. Child, who was sixteen years old, testified that, among other things, she was raped in foster care, and despite the gravity of this allegation, the GAL maintained that Child's health issues and Mother's failures in this regard necessitated placement. N.T., 6/19/17, at 52, 55-56, 58-59. We conclude that these divergent opinions constituted a conflict, the trial court abused its discretion in concluding otherwise, and erred in refusing to appoint a separate GAL. Accordingly, we reverse the trial court's August 24, 2017 order that denied the appointment of a separate GAL, and we remand this matter to the trial court for the appointment of a GAL to represent Child's best interests while the current GAL shall continue to

represent Child's legal interests as counsel for Child pursuant to Pa.R.J.C.P. 1151(C).

Order reversed. Case remanded with instructions. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/26/2018